UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
FRANKIE CANCEL,                                                         :
                                                                        :
                              Plaintiff,                        :        13-CV-6007 (JMF)
                                                                        :
               -v-                                           :        OPINION AND ORDER
                                                                        :
NYPD COMMISSIONER RAYMOND KELLY, et al.,                                :
                                                                        :
                          Defendants.                       :
                                                                        :
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/11/2016

JESSE M. FURMAN, United States District Judge:

      Plaintiff Frankie Cancel, proceeding *pro se*, brings this action against the City of New York, former Mayor Michael Bloomberg, former New York City Police Department ("NYPD") Commissioner Raymond Kelly, and various NYPD officers. Plaintiff's claims arise out of two unrelated encounters with the NYPD: his arrest on May 26, 2012, and the search of his residence on October 9, 2013. Plaintiff brings federal and state law claims for false arrest, use of excessive force, unlawful search, malicious prosecution, First Amendment retaliation, racial profiling, and municipal liability. Defendants move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on all of Plaintiff's claims; Plaintiff cross-moves for partial summary judgment on his claims for municipal liability and false arrest. For the reasons stated below, Defendants' motion is granted and Plaintiff's cross-motion is denied.

## BACKGROUND

      The relevant facts, taken from materials submitted in connection with the pending motion, are either undisputed or described in the light most favorable to Plaintiff. *See Costello v.*

*City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).  As noted, Plaintiff's claims arise out of two unrelated encounters with NYPD officers on May 26, 2012, and October 9, 2013.

**A.  The May 26, 2012 Arrest**

On May 26, 2012, Defendants Carlos Cruz, Tyrone Forde, and Christopher Krause ("the Vice Officers") visited Soul 2 Soul bar in Brooklyn, an establishment that was known to stay open after hours and create a nuisance for the surrounding neighborhood.  (*See* Defs.' Rule 56.1 Statement (Docket No. 74) ("Defs.' SOF") ¶¶ 2-3).  The Vice Officers arrived at Soul 2 Soul at 2:20 a.m. to conduct a liquor license check.  (*Id.* ¶¶ 4-6).  When they entered the bar, there were approximately fifty people inside.  (*Id.* ¶ 5).  Detective Forde ordered the employees to turn off the music and turn on the lights, then ordered patrons to step away from the bar (where there were bottles and glasses that could conceivably be used as weapons) so that the Vice Officers could complete the license check.  (*Id.* ¶¶ 6-7; *see* Defs.' Decl. Supp. Mot. Summ. J. (Docket No. 73) ("Cooper Decl."), Ex. B, ¶ 11-12; Resp. Opp'n Defs.' Local Rule 56.1 Statement (Docket No. 81) ("Pl.'s Resp. SOF") 3-4).  Plaintiff was standing at the bar when that order was issued.  (Defs.' SOF ¶ 8).  Several of the Vice Officers then approached Plaintiff individually and asked him to leave.  (*Id.* ¶ 10).  Plaintiff did not comply, but instead asked the officers whether he could finish his drink and get his change.  (*Id.*).  The officers repeated their order; when Plaintiff again did not comply, the officers arrested him and placed him in handcuffs.  (*See id.* ¶ 12; Cooper Decl., Ex. A, at 36-37).  Detective Krause issued Plaintiff a summons for disorderly conduct, a charge that was later dismissed.  (Defs.' SOF ¶¶ 17-21).  On August 24, 2012, Plaintiff sought medical treatment at the Ocean Chiropractic Center for injuries allegedly caused by the handcuffs placed on him on the night of his arrest.  (*Id.* ¶¶ 22-25).

B.  **The October 9, 2013 Search**

On October 9, 2013, at approximately 8:30 a.m., Defendants Kevin Breen, Michael Berrios, Jose Mucciaccio, Tyrone Woodson, and Lahmar Sanders ("the Warrant Squad") knocked on the front door of 490 Hart Street in Brooklyn, where Plaintiff lived.  (*See id.* ¶ 45-48).  Plaintiff answered the door and told the officers that he lived on the first floor and that his sister, Lucy Cancel, lived on the second floor.  (*Id.* ¶¶ 55-56; Pl.'s SOF 20; Cooper Decl., Ex. C ¶ 14).  At the time, the officers were aware of an outstanding arrest warrant for Matthew Cancel, Plaintiff's nephew, which indicated that he lived in Apartment 2 of 490 Hart Street, and a bench warrant for Darlene Tinsley, Matthew's girlfriend, which listed her residence as 490 Hart Street. (*See* Defs.' SOF ¶¶ 39-40, 43-44).  Plaintiff confirmed that Matthew Cancel was his nephew. (*Id.* ¶ 56).  The Warrant Squad proceeded to search the first floor of 490 Hart Street over Plaintiff's objection, searching only places where a person could be hiding.  (*Id.* ¶ 58).  After searching the first floor, the Warrant Squad proceeded to search the basement and the second floor as well, but did not find either of the people they were looking for.  (*Id.* ¶ 59-60).  The Warrant Squad left 490 Hart Street less than fifteen minutes after they first entered.  (*Id.* ¶ 61).

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam).  A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a judgment for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).  The moving party bears the initial burden of demonstrating the absence of a

3

genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).  When, as in this case, both sides move for summary judgment, the district court is "required to assess each motion on its own merits and to view the evidence in the light most favorable to the party opposing the motion, drawing all reasonable inferences in favor of that party."  *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011).  Thus, "neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it."  *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993).

To defeat a motion for summary judgment, a non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits

supporting the motion are not credible." *Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted). Affidavits submitted in support of, or opposition to, summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show "that the affiant is competent to testify to the matters stated therein." *Patterson v. Cty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).

It is well established that the "special solicitude" afforded to *pro se* litigants extends to the opposition to a motion for summary judgment. *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). Thus, a *pro se* party's papers opposing summary judgment are to be read liberally and interpreted to raise the strongest arguments that they suggest. *See, e.g.*, *Clinton v. Oppenheimer & Co. Inc.*, 824 F. Supp. 2d 476, 481 (S.D.N.Y. 2011). This special solicitude is not unlimited, however, and does not "relieve" a plaintiff of his or her "duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted). Nor is the "duty to liberally construe a plaintiff's [opposition] . . . the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (quoting 2 Moore's Federal Practice § 12.34[1] [b], at 12-61 (internal quotation marks omitted)).

## DISCUSSION

As noted, Plaintiff brings federal and state law claims for false arrest, excessive force, unlawful search, malicious prosecution, First Amendment retaliation, racial profiling, and municipal liability. Defendants move for summary judgment on all claims. The Court will address each set of claims in turn.

**A. False Arrest Claims**

To establish a claim of false arrest under Title 42, United States Code, Section 1983 or New York law a plaintiff must demonstrate that "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (internal quotation marks omitted). Of particular relevance here, "'[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983.'" *Jenkins v. City of N.Y.*, 478 F.3d 76, 84 (2d Cir. 2007) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). Probable cause to arrest exists if the arresting officers have actual "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852. A court should consider the "totality of the circumstances" in evaluating whether "the facts available to the officer at the time of arrest" meet that bar. *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002). It is enough that probable cause existed to arrest a defendant, and it is irrelevant "whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006).

Applying those standards here, the Court concludes that the Vice Officers had probable cause to believe that Plaintiff was guilty of both disorderly conduct and obstructing governmental administration and, thus, that Plaintiff's false arrest claims fail as a matter of law.[1]

---

[1] Plaintiff argues that Defendants are collaterally estopped from "re-litigating" probable cause because "the New York City Criminal Court already determined that there was no probable cause to arrest" him when it dismissed the charge of disorderly conduct. (Pl.'s Mem.

6

Under New York law, a person commits disorderly conduct when, "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof," he "congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse . . . ." N.Y. Penal Law § 240.20(6).  Thus, an officer is "warranted in believing" that a person has committed the crime of disorderly conduct only if the officer has reasonable cause to believe (1) that the person's conduct was public in nature, (ii) that the person acted with "intent to cause public inconvenience, annoyance or alarm" or with recklessness as to "a risk thereof," and, as relevant here, (3) the person refused to comply with a lawful order to disperse.  *Provost v. City of Newburgh*, 262 F.3d 146, 157 (2d Cir. 2001); *see* N.Y. Penal Law § 240.20(6).  Here, the totality of the circumstances surrounding Plaintiff's arrest indicates that probable cause existed to believe that his "conduct satisfied all three components of § 240.20." *Provost*, 262 F.3d at 157.

First, it is undisputed that the Vice Officers entered the bar at 2:20 a.m. and asked all patrons to put down their drinks and step away from the bar to allow the officers to conduct a liquor license check.  (*See* Defs.' SOF ¶¶ 6-7).  It is also undisputed that the bar was crowded at the time — with approximately fifty people inside the venue, some of whom may well have been intoxicated.  (*See* Defs.' SOF ¶ 5).  Finally, Plaintiff admits that he disobeyed the instruction to step away from the bar and tried to argue with the Vice Officers when they approached him

---

Law Supp./Opp'n Summ. J. (Docket No. 79) ("Pl.'s Opp'n") 18).  Plaintiff's collateral estoppel argument is meritless.  The summons issued to Plaintiff was dismissed because it was "legally insufficient." (*See* Cooper Decl., Exs. L, M).  That sort of dismissal is not a dismissal "on the merits" for purposes of collateral estoppel.  *See Breen v. Garrison*, 169 F.3d 152, 153 (2d Cir. 1999) (per curiam) (holding that a dismissal "for facial insufficiency . . . was not a decision on the merits").  Moreover, as discussed below, the Vice Officers had probable cause to believe that Plaintiff had committed the crime of obstructing governmental administration under New York law, which provides an independent basis for dismissal of Plaintiff's false arrest claims.  Defendants are obviously not collaterally estopped from arguing that probable cause existed to arrest Plaintiff for that offense because Plaintiff was never charged with it.

7

individually. (*See* Cooper Decl. Ex. A (Cancel Dep.) 36). Given these facts, there is no dispute that Plaintiff's conduct was "public" in nature. *Cf. Provost*, 262 F.3d at 157-58 ("It is undisputed that the incident occurred in the police station, that six or seven members of the public were in the waiting room, and that a number of police officers were present in the station. We agree . . . that as a matter of law, [that] conduct was sufficiently public to trigger the disorderly conduct statute."). Additionally, the Vice Officers had probable cause to believe that Plaintiff's behavior was reckless as to a risk of public alarm or inconvenience. Under New York law, "a person may be guilty of disorderly conduct only when the situation extends beyond the exchange between the individual disputants to a point where it becomes a potential or immediate public problem." *People v. Weaver*, 16 N.Y.3d 123, 128 (2011) (internal quotation marks omitted). "[T]he time and place of the episode" (2:20 a.m. in a bar), "the number of other people in the vicinity" (about fifty people in a closed space), and "the nature and character of [Plaintiff's] conduct" (refusing a direct request, trying to argue with officers) are all factors a reasonable officer might consider in evaluating the situation, and suggest that Plaintiff's refusal to cooperate risked escalating into a public disturbance. *See id.*

As for the final element of a disorderly conduct violation, Plaintiff does not dispute that he refused to comply with the Vice Officers' order. Instead, he contends that no probable cause existed to believe that he "refuse[d] to comply with a lawful order of the police to disperse" because no order to disperse was given; Plaintiff argues that Detective Forde's order that he leave the premises was not an order to disperse because an individual cannot "disperse." (Pl.'s Opp'n 15-16). In support of that argument, Plaintiff relies on *Higginbotham v. City of N.Y.*, 105 F. Supp. 3d 369 (S.D.N.Y. 2015), in which the plaintiff — a journalist at an Occupy Wall Street protest — had been ordered to climb down from the top of a telephone booth. *Id.* at 372. Noting

that the order was specific to the plaintiff, the Court concluded that the order did not amount to an order to "disperse" because "a group can disperse; an individual cannot." *Id.* at 373 (internal quotation marks omitted). Here, unlike in *Higginbotham*, Plaintiff concedes that he was not the only person confronted by the Vice Officers; he alleges that the officers also approached numerous "patrons as well as employees of the business." (Second Am. Compl. (Docket No. 40) ¶ 41). And while Plaintiff purports to "deny" the Vice Officers' testimony that they asked *all* patrons to put down their drinks and step away from the bar, he admits that he has no personal knowledge of what the officers stated to other patrons. (*See* Pl.'s Resp. SOF 4). Bare, *ipse dixit* denials of that sort carry little or no weight at the summary judgment stage. *See Gottlieb*, 84 F.3d at 518. Accordingly, the Court concludes that the Vice Officers had probable cause to believe that an order to disperse had been given and that Plaintiff refused to comply with it. The Court therefore concludes that, as a matter of law, probable cause existed for the arresting officers to believe that Plaintiff's "conduct satisfied all three components of § 240.20," *Provost*, 262 F.3d at 157, making out a "complete defense to [Plaintiff's] action for false arrest," *Jenkins*, 478 F.3d at 84.

In any event, even assuming *arguendo* that the Vice Officers did not have probable cause to believe that Plaintiff violated the disorderly conduct statute, the Court would reach the same conclusion because they had probable cause to believe that Plaintiff had committed the crime of obstructing governmental administration.[2] A person "is guilty of obstructing governmental

---

[2] It is true that Plaintiff was not charged with obstructing governmental administration. It is well established, however, that the "probable-cause inquiry" is not confined to "the offense actually invoked at the time of arrest," or even to offenses "closely related to the offense" invoked. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (internal quotation marks omitted). It is enough that probable cause existed to believe that Plaintiff committed some offense. *See id.* 152-53.

9

administration when he intentionally . . . prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference . . . ." N.Y. Penal Law § 195.05. "[U]nder New York law, merely approaching the police, or speaking during the course of a police action, or disregarding police instructions, will support a conviction for [obstructing governmental administration]." *Rasmussen v. City of N.Y.*, 766 F. Supp. 2d 399, 403 (E.D.N.Y. 2011) (citing *Husbands ex rel. Forde v. City of N.Y.*, No. 05-CV-9252 (NRB), 2007 WL 2454106, at *12-13 (S.D.N.Y. Aug. 16, 2007)). Here, there is no question that Plaintiff refused to comply with a direct order from a police officer. Plaintiff's only counterargument is that the order he was given was not lawful. (Pl.'s Opp'n 19). But the only case Plaintiff cites in support of that argument — a trespass case holding that a person does not commit criminal trespass if she "enter[s] or remain[s] in a restaurant that is open to the general public," *Bang v. Utopia Rest.*, 923 F. Supp. 46, 49 (S.D.N.Y. 1996) — is entirely inapposite. Plaintiff's conclusory contention that the order given to him was "unlawful" is not enough to defeat the argument that the Vice Officers had probable cause to arrest him. It follows that his false arrest claims must be, and are, dismissed as a matter of law.

## B. Excessive Force Claims

Plaintiff also claims that the Vice Officers used excessive force in placing him in handcuffs.[3] The Second Circuit has held that, although handcuffing is not "*per se* reasonable," it

---

[3] Plaintiff brings his excessive force and unreasonable search claims under both Section 1983 and the New York State Constitution. But when a remedy is available under Section 1983, as it is here, a "state constitutional tort claim is considered redundant and precluded." *Noonan v. City of N.Y.*, No. 14-CV-4084 (LTS) (JLC), 2015 WL 3948836, at *9 (S.D.N.Y. June 26, 2015) (internal quotation marks and alterations omitted); *see also, e.g.*, *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 520 (S.D.N.Y. 2013) ("District courts in this circuit have consistently held that there is no private right of action under the New York State Constitution where, as here, remedies are available under § 1983." (internal quotation marks omitted)).

"will be the reasonable course in many, if not most arrest situations." *Soares v. Connecticut*, 8 F.3d 917, 921 (2d Cir. 1993); *cf. Beckles v. City of N.Y.*, 492 F. App'x 181, 182 (2d Cir. 2012) (summary order) ("While there is a general consensus among courts to have addressed the issue that otherwise reasonable force used in handcuffing a suspect may be unreasonable when used against a suspect whom the officer knows to be injured, these cases involving handcuffing uniformly concern suspects who either have visible injuries or are cooperating in their arrests."). In evaluating the reasonableness of how handcuffs were used in a particular case, courts consider whether "1) the handcuffs were unreasonably tight; 2) the defendants ignored the plaintiff's pleas that the handcuffs were too tight; and 3) the degree of *injury to the wrists*." *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008) (internal quotation marks and brackets omitted). The third factor is particularly important: "There is a consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort." *Id.* (gathering cases).

In this case, Plaintiff alleges that he suffered continuing injury of the kind that might support an excessive force claim — specifically, that "he lost sensitivity in his hands" and "was left . . . with a permanent scar[]" as a result of the Vice Officers' use of handcuffs. (Pl.'s Opp'n 22). At the motion to dismiss stage, those allegations alone might suffice. *See Simpson v. Saroff*, 741 F. Supp. 1073, 1078 (S.D.N.Y. 1990). But, at the summary judgment stage, a plaintiff "cannot defeat the motion by relying on the allegations in [his] pleading or on conclusory statements." *Gottlieb*, 84 F.3d at 518. Even more to the point, "unsubstantiated claims of nerve damage, in the absence of corroborating medical evidence, are insufficient to sustain a claim of excessive force from handcuffing." *Matthews v. City of N.Y.*, 889 F. Supp. 2d 418, 442 (E.D.N.Y. 2012) (internal quotation marks and brackets omitted). Here, there is not

11

only a lack of "corroborating medical evidence"; the evidence in the record contradicts Plaintiff's subjective and conclusory assertions of injury. First, in photographs of Plaintiff's wrist, no scars are visible (*see* Cooper Decl., Ex. X; Pl.'s Opp'n, Ex. 10), and Plaintiff himself stated that, immediately after the handcuffs were taken off, he had only "a slight scratch" on his wrist. (Cooper Decl., Ex. A, at 45). Second, Plaintiff sought no medical treatment for almost three months after the incident. (*See* Def. SOF ¶¶ 23-25). Third, the medical records from that visit contain no reference to any injury to Plaintiff's wrists. (*See* Cooper Decl., Ex. N). And fourth, medical records from Plaintiff's treatment at NYC Medical & Neurodiagnostic from late 2013 indicate that Plaintiff did not suffer from any nerve damage. (*See* Cooper Decl., Ex. O). For those reasons, the Court concludes that a reasonable jury could not find that Plaintiff suffered any continuing injury as a result of the handcuffs used in his arrest, a conclusion that "is fatal to [his] excessive force claim[s]." *Lynch*, 567 F. Supp. 2d at 468.

**C. Unlawful Search Claims**

Next, Plaintiff claims that the Warrant Squad unlawfully entered and searched his home on October 9, 2013. As a general rule, "the police do not need a search warrant to enter a suspect's home when they have an arrest warrant for the suspect." *United States v. Lauter*, 57 F.3d 212, 214 (2d Cir. 1995); *see also Cogswell v. Cty. of Suffolk Sheriff's Dep't*, 375 F. Supp. 2d 182, 187 (E.D.N.Y. 2005) (applying the same principles to bench warrants). That is because "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980). Thus, officers "may enter a suspect's residence, or what they have reason to believe is his residence, in order to effectuate an arrest warrant where a reasonable belief exists that the suspect is present." *Lauter*, 57 F.3d at 214. The

12

reasonable belief standard requires a lesser showing than probable cause. *See id.* at 215. Moreover, for a belief to be reasonable, it need not turn out to be correct. *See, e.g.*, *United States v. Lovelock*, 170 F.3d 339, 343 (2d Cir. 1999). Once officers have lawfully entered a residence pursuant to an arrest warrant, "they may conduct a search of the premises to the extent necessary to locate the individual to be arrested." *United States v. Passarella*, 788 F.2d 377, 381 n.4 (6th Cir. 1986) (citing cases); *cf. Maryland v. Buie*, 494 U.S. 325, 330 (1990) ("[U[ntil the point of Buie's arrest the police had the right, based on the authority of the arrest warrant, to search anywhere in the house that Buie might have been found, including the basement.").

Here, it is undisputed that, at the time the Warrant Squad officers entered Plaintiff's home, they were aware of (1) a valid arrest warrant for Matthew Cancel, Plaintiff's nephew, which indicated that he lived in Apartment 2 of 490 Hart Street; and (2) a valid bench warrant for Darlene Tinsley, Matthew's girlfriend, which listed her residence as 490 Hart Street. (*See* Pl.'s Resp. SOF 13-14). Further, the arrest warrant for Matthew was issued less than three weeks before the Warrant Squad entered Plaintiff's home. (*See* Defs.' SOF ¶¶ 39-40). Based on those facts, the Warrant Squad had ample reason to believe that Matthew or Darlene or both would be present at the 490 Hart Street residence when they entered around 8:30 a.m. *See United States v. Camilo*, 287 F. Supp. 2d 446, 450 (S.D.N.Y. 2003) ("[O]nce police officers have reason to believe that a suspect lives in a particular dwelling, they may reasonably infer that he will be home early in the morning." (internal quotation marks omitted)). The Warrant Squad was therefore entitled to enter 490 Hart Street. *See, e.g.*, *Lovelock*, 170 F.3d at 343-45 (holding that officers reasonably believed a suspect resided at the address listed on a recently issued warrant); *Bartlett v. City of N.Y.*, No. CV031961 (CPS), 2005 WL 887112, at *6 (E.D.N.Y. Feb. 11, 2005) (same); *United States v. Delva*, 13 F. Supp. 3d 269, 274 (S.D.N.Y. 2014) (observing there was

"no dispute" that officers were entitled to enter a suspect's last known address in order to execute a valid arrest warrant).

Plaintiff separately contends that the search conducted by the Warrant Squad after the officers entered his building was unreasonable because he told the officers that he lived alone on the first floor. Once an officer enters a suspect's residence pursuant to a valid arrest warrant, however, the officer obviously has authority to attempt to effectuate the warrant by searching for the suspect. *See United States v. Spencer*, 522 F. Supp. 463, 466 (E.D.N.Y. 1981) ("[T]he police officers could reasonably believe that [the suspect named in the warrant] was at this residence . . . . Consequently, the entry into the residence *and search for the suspect therein* were proper." (emphasis added)). Here, although Plaintiff told the officers that he lived alone on the first floor, the members of the Warrant Squad reasonably suspected that Plaintiff's nephew might have been hiding in Plaintiff's living space. (*See* Cooper Decl., Ex. C, ¶ 14). And the undisputed facts indicate that the Warrant Squad's search of the first floor was reasonably limited to places where Matthew could have been hiding. (*See* Defs.' SOF ¶ 58). Plaintiff's principal counterargument is that he refused to consent to the search, but Plaintiff's refusal to consent is irrelevant where, as here, a valid search warrant provided an independent justification for the warrant squad's entry and search. Plaintiff's unreasonable search claims must be and are therefore dismissed.

### D. Plaintiff's Remaining Claims

Plaintiff's remaining claims — for malicious prosecution, First Amendment retaliation, racial profiling, and municipal liability pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978) — can be disposed of quickly. First, Plaintiff has voluntarily withdrawn his malicious prosecution claims. (Pl.'s Opp'n 23-24). Second, with respect to Plaintiff's First Amendment claims, Plaintiff has produced no evidence suggesting that any Defendant took any

14

action against him because of his exercise of protected First Amendment rights. That failure is fatal to Plaintiff's First Amendment claims. *See Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) (holding that a plaintiff must prove, *inter alia*, that "defendants' actions were motivated or substantially caused by his exercise of [his First Amendment rights]" in order to establish a retaliation claim). Third, although Plaintiff's Second Amended Complaint purports to bring a claim under New York City Administrative Code § 14-151, *et seq.* (Second Am. Compl. ¶ 1), which prohibits racial and ethnic profiling, he points to no evidence that might support that claim. Thus, any racial profiling claim must be dismissed. Finally, although *Monell* provides a means for holding a municipality liable for a constitutional deprivation, it does not provide an independent cause of action where no underlying constitutional violation exists. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (observing that *Monell* stands for the rule that "a municipality can be found liable under § 1983 only where the municipality itself *causes the constitutional violation at issue*" (emphasis added)). Because all of Plaintiff's constitutional claims fail as a matter of law, any claim Plaintiff might have under *Monell* also fails.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in its entirety, and Plaintiff's cross motion for partial summary judgment (on his *Monell* claims) is denied.[4] This Court certifies, pursuant to Title 28, United States Code, Section 1915(a)(3), that

---

[4] The Court need not and does not reach Defendants' other arguments, except to note that qualified immunity would provide an alternative basis for the Court's dismissal of Plaintiff's false arrest and unlawful search claims, (*see* Defs.' Mem. Law Supp. Mot. Summ. J. (Docket No. 75) 22-25), and that Plaintiff fails to allege (let alone prove) the "personal involvement" of several Defendants (including Mayor Bloomberg and Commissioner Kelly), as is required to maintain a Section 1983 claim against them, (*see id.* 28-30).

any appeal from this Opinion and Order would not be taken in good faith, and *in forma pauperis* status is thus denied. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to mail a copy of this Opinion and Order to Plaintiff, to terminate Docket No. 72, and to close this case.

SO ORDERED.

Date:   February 11, 2016
       New York, New York

JESSE M. FURMAN
United States District Judge